UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
IN THE MATTER OF THE COMPLAINT OF

BOUCHARD TRANSPORTATION CO., INC.,
MOTOR TUG ELLEN S. BOUCHARD INC. and
B. NO. 280 CORPORATION

AS OWNERS, OWNERS *PRO HAC VICE,*
AND OPERATS OF THE:

BARGE B. NO. 280 and TUG ELLEN S. BOUCHARD

------------------------------------------------------------------------X

<table>
<tr><td>USDC SDNY</td></tr>
<tr><td>DOCUMENT</td></tr>
<tr><td>ELECTRONICALLY FILED</td></tr>
<tr><td>DOC #: _____</td></tr>
<tr><td>DATE FILED: <u>September 29, 2014</u></td></tr>
</table>

**IN ADMIRALTY**

**14 Civ. 1262 (PAC)**

**OPINION AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Limitation Plaintiffs Bouchard Transportation Co., Motor Tug Ellen S. Bouchard (the

"Tug"), Barge B. No. 280 (the "Barge") and B. No. 280 Corporation (collectively, "Bouchard")

have filed an action to limit their liability for a maritime event which occurred on January 6,

2014. Bouchard dropped anchor in Hempstead Harbor, allegedly damaging an underwater

electrical cable. Limitation Defendants Power Authority of the State of New York ("NYPA"),

the Long Island Lighting Company ("LIPA"), Associated Electric & Gas Insurance Services

Limited, Energy Insurance Mutual Limited, Brit UW Limited, Talbot Underwriting (US)

Limited, Princeton Excess & Surplus Lines Insurance Company, Westport Insurance

Corporation, Aspen Specialty Insurance Company, Navigators Management Company, Inc.,

New York on behalf of Lloyd's Syndicates: 1221 Navigators, 4000 Pembroke and 2015 Channel

and National Union Fire Insurance Company of Pittsburgh, PA (collectively, "Cable Interests")

now move for an Order compelling Bouchard to post security for the Barge, in addition to the

security Bouchard previously posted for the Tug. For the following reasons, Cable Interests'

1

motion is granted.

## BACKGROUND

NYPA owns and operates a system of electrical transmission cables buried beneath the Long Island Sound known as the Y-49 Cable System. (Answer, Affirmative Defenses, and Claim of the Power Authority of the State of New York and Denominated Underwriters, ("NYPA Answer"), at 10; Answer, Affirmative Defenses, and Claim of The Long Island Lighting Company d/b/a LIPA ("LIPA Answer"), at 8-9).[1]  On January 6, 2014, the Tug and the Barge were operating on the Long Island Sound. (NYPA Answer at 11; LIPA Answer at 10; Complaint for Exoneration From or Limitation of Liability ("Complaint"), at ¶ 10).  Cable Interests allege that the Tug and the Barge were near the entrance to Hempstead Harbor when "the Tug and Barge deployed its anchor and anchor chain on top of, or dragged its anchor and anchor chain across and against . . . ." Cable #3 of the Y-49 Cable System. (NYPA Answer at 11; LIPA Answer at 10).  The cable was ruptured and began to leak dielectric fluid into the Long Island Sound. (NYPA Answer at 11; LIPA Answer at 10).  The rupture also caused a service interruption. (NYPA Answer at 11; LIPA Answer at 10).  According to Cable Interests, the Tug can connect to the stern of the Barge in a "pushing configuration," by means of which the Tug and the Barge can move as one. (NYPA Answer at 11; LIPA Answer at 10).

On February 26, 2014, Bouchard filed its Limitation Act Complaint, seeking exoneration or, alternatively, to cap its liability for the incident to the value of the Tug. (Dkt. 2).  Bouchard also submitted security in the amount of $2,588,200, asserting that this amount represented the value of the Tug and the pending freight. (Dkt. 4).  The Court approved the security and issued an Order requiring notice to claimants and restraining suits against Bouchard on February 28,

---

[1] LIPA filed an answer separately from Cable Interests, the contents of which are identical to Cable Interests' Answer in all respects relevant to this motion.

2014. (Dkt. 3). After Cable Interests disputed the value of the Tug, the parties reached a compromise and stipulated to the value of both the Tug and the Barge. (Dkt. 57). Limitation Plaintiffs subsequently posted additional security for the Tug to reach the stipulated amount of $4,000,000, with an additional $88,200 posted for the value of the pending freight. (Dkt. 58).

On May 30, 2014, Cable Interests moved to compel Bouchard to post security for the Barge. (Dkt. 44).

## DISCUSSION

### I.   Applicable Law

Under the Limitation Act, "the liability of the owner of a vessel for any claim, debt, or liability . . . shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30505(a). In order to receive this protection, the owner must file an action in district court within six months of receiving notice of a claim, at which point the owner must "deposit with the court, for the benefit of claimants . . . an amount equal to the value of the owner's interest in the vessel and pending freight, or approved security." *Id.* § 30511(b)(1)(A). Once the owner has complied with these requirements, "all claims and proceedings against the owner related to the matter in question shall cease." *Id.* § 30511(c).

In a situation involving "pure tort" such as this, security need only be posted for vessels involved in the relevant incident. Courts have interpreted "vessel" in sections 30505 and 30511 to mean only those vessels alleged to be actively involved in creating the harm. *See Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn E. Dist. Terminal*, 251 U.S. 48, 52-54 (1919) ("any vessel" as used in the Limitation Act applies to "offending" vessels and not vessels that were "passive instruments" in the incident); *Petition of Lake Tankers Corp.*, 132 F. Supp. 504, 506 (S.D.N.Y. 1955) ("Liability is governed by the individual wrongdoing of each vessel

3

involved and a petitioner may only be called upon to surrender such vessels as are found at fault."). Therefore, a vessel which caused harm merely as a result of being pushed by a tug, (*i.e.*, a passive instrument) is not considered an offending vessel. *Liverpool*, 251 U.S. at 52; *In re Midland Enters., Inc.*, 296 F. Supp. 1356, 1361-63 (S.D. Ohio 1968). If, however, "the evidence shows some breach of duty on the part of the tow or an act of negligence attributable to it that played a part in bringing about the casualty, the tow may be found to be an offending vessel along with the tug and properly included in the limitation fund." *Cody v. Phil's Towing Co.*, 247 F. Supp. 2d 688, 692-93 (W.D. Pa. 2002); *accord Deep Sea Tankers, Ltd. v. The Long Branch*, 258 F.2d 757, 773-74 (2d Cir. 1958) ("[I]f a vessel in tow of a negligent tug is found at fault, for absence of lights for example, the value of both vessels must be included in the limitation fund."). A tow "may be held responsible when it is shown that it was at fault in addition to the tug being negligent." *Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F. Supp. 907, 913 (D. Md. 1971).

## II.    Analysis

Cable Interests argue that Bouchard must post security for the Barge because "both the Tug and the Barge were the offending vessels." (Cable Interests' Memorandum of Law in Support of Their Motion Requiring Adequate and Proper Security to be Posted Forthwith for Barge No. 280 ("Cable Mem."), at 3-10). Cable Interests also suggest that by including the Barge in its Complaint seeking limitation, Bouchard has "tacitly concede[d]" that the Barge was an offending vessel, because "[i]f the Barge was truly 'passive' then there would be no reason to seek limitation for it." (*Id.* at 8). Bouchard, on the other hand, asserts that the Barge was merely a passive instrument in the incident, that Cable Interests' allegations to the contrary are insufficient under the relevant pleading standards, that Bouchard did not concede the vessel's

4

involvement by seeking limitation but merely put forth alternative theories of exoneration and

limitation of liability, and that for these reasons no security for the Barge should be posted.

(Memorandum of Law in Opposition to Motion to Increase Security ("Opp. Mem."), at 2-11).

As an initial matter, the Court rejects Cable Interests' argument regarding Bouchard's

acknowledgement of the Barge's involvement.  There is no case law to support the argument that

inclusion of a vessel in a complaint for exoneration or limitation constitutes an admission of that

vessel's involvement.  By including the Barge in its Complaint, Bouchard sought either to

exonerate the Barge or, should such relief be unattainable, to limit liability for the Barge, a

proper and appropriate form of alternative pleading under Fed. R. Civ. P. 8(d)(3)(A).  Nothing

about the Barge's inclusion in the petition may be construed as an acknowledgement that the

Barge was an offending vessel.  *See Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95-96 (2d Cir. 1994)

(prohibiting the construction of one claim "as an admission against another alternative or

inconsistent claim").

Whether security for the Barge has to be posted depends on whether Cable Interests have

adequately alleged that the Barge constitutes an offending vessel.[2]  The parties dispute what

pleading standards are applicable.  Since this is an *in rem* maritime action, the Court will apply

the pleading standard in Admiralty Rule E(2)(a).  *See ICC Handels A.G. v. China Jiangsu Int'l*

*Econ.-Technical Coop. Corp.*, 2009 WL 3401254, at *1 (S.D.N.Y. Oct. 19, 2009) (discussing

Rule E's requirements and noting that Rule E is more stringent than the pleading requirements of

Fed. R. Civ. P. 8).

Nonetheless, even with the higher standard, Cable Interests have sufficiently alleged that

the Barge is an offending vessel.  Bouchard argues that Cable Interests' allegations are

---

[2] The Court notes that on the procedural posture presented by this Complaint for Limitation of Liability, Cable Interests' allegations appear in its Answers. *See* Dkt. 26, Dkt. 30.

insufficient because "the allegation of the Barge lowering of the anchor does not create a

reasonable inference that the Barge was independently negligent, since there is no allegation that

the Barge was in control of the decision when and where to lower the anchor, nor is there an

allegation that the Barge made the decision to lower the anchor." *Id.* at 8-9.  Rule E requires that

a complaint "state the circumstances from which the claim arose with such particularity that the

defendant or claimant will be able without moving for a more definite statement, to commence

an investigation of the facts and to frame a responsive pleading." *Accord Riverway Co. v. Spivey*

*Marine & Harbor Serv. Co.*, 598 F. Supp. 909, 913 (S.D. Ill. 1984) ("The complaint [under Rule

E] should state the date, time, place, nature of the damaging incident, and the alleged wrongful

action.  Those usual requirements are, of course, always subject to the general standard that the

complaint sufficiently notify the defendant of the incident in dispute and afford a reasonable

belief that the claim has merit.").  Cable Interests' Answer amply performs this function.  In

addition to providing the identifying information of the incident, such as the date, time, place,

and details of the incident, the answer lists seven plausible allegations of negligence, all of which

specifically refer to the Barge.  (NYPA Answer at 4; LIPA Answer at 4).  While Bouchard

submits that Cable Interests "allege no specific facts which make the Barge the 'offending

vessel,'" Opp. at 6, this is clearly inaccurate.

For example, Cable Interests allege that "the failure to instruct master and crew of either

or both the Tug and Barge to avoid deploying anchor(s) in the immediate vicinity of the known

Y-49 Cable System" and that the Tug and the Barge failed "to require proper monitoring,

supervision and safety procedures for use of anchors."  (NYPA Answer at 4; LIPA Answer at 4).

These allegations, and others, precisely identify the Barge's allegedly negligent or wrongful acts.

*See In re Lake Tankers*, 1955 AMC 55, at *1 (S.D.N.Y. 1955) ("Whether the barge was a

contributing factor to the collision has been put in issue by the allegations of the petition and the contention of the movant on this motion.").[3]  Upon the information provided by Cable Interests, Bouchard "can hardly argue it has been unable to commence investigation of the facts and to frame a responsive pleading." *Goldrich Ocean Int'l Shipping Ltd. v. Pan World Logistics Co.*, 2009 WL 1357955, at *3 (S.D.N.Y. 2009).  Cable Interests' claims set forth plausible allegations regarding the Barge's role in the incident as an offending vessel.  Accordingly, Bouchard must post security in an amount equal to the value of the Barge, in addition to the security it has posted for the Tug.[4]

## CONCLUSION

The Court grants Cable Interests' motion for Bouchard to post security for Barge B. No. 280.  Pursuant to the parties' September 19, 2014 stipulation (Dkt. 58), the fair market value of the Barge B. No. 280 is $15,000,000.00.  Bouchard is directed to post security in this amount on behalf of Barge B. No. 280 within fourteen (14) days of this Memorandum and Order.


Dated: New York, New York               SO ORDERED
     September 29, 2014

_____
PAUL A. CROTTY
United States District Judge

---

[3] The Court notes that Bouchard's suggestion that "[p]lausibility requires foundation allegations that the Barge had motive power and was involved in the navigation and operation of the unit, neither of which was—or could be—alleged" is without merit.  Motive power is not a necessary finding for a tow to be deemed an offending vessel. *See, e.g., In re Lake Tankers*, 1955 AMC 55, at *1 (S.D.N.Y. 1955) ("If the barge was not equipped with proper lights, as movant asserts, it cannot now be said that she was not an offending vessel merely because she was without motive power and under control of the tug.").

[4] The Court notes that Supplemental Rule F(7) allows Bouchard to move for a reduction in security.  Should discovery or an evidentiary hearing absolve the Barge of involvement, Bouchard may utilize this procedure to seek to reduce the amount of security.