UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Power Authority of the State of New York,<br><br>        Plaintiff,<br><br>        v.<br><br>The tug *M/V ELLEN S. BOUCHARD*, and the barge *B. NO. 280*, their engines, apparel, tackle, boats, appurtenances, etc., *in rem*, and Bouchard Transportation Co., Inc., Motor Tug Ellen S. Bouchard, Inc., and B. No. 280 Corp., *in personam*,<br><br>        Defendants. | **CASE NO.** 14-cv-0617 (PAC) |
| IN THE MATTER OF THE COMPLAINT OF<br><br>BOUCHARD TRANSPORTATION CO., INC., MOTOR TUG ELLEN S. BOUCHARD INC., and B. NO. 280 CORPORATION,<br><br>AS OWNERS, OWNERS *PRO HAC VICE*, AND OPERATORS OF THE:<br><br>BARGE B. NO. 280 and TUG ELLEN S. BOUCHARD | **CASE NO.** 14-cv-1262 (PAC) |

**CABLE INTERESTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE PORTIONS OF THE MAIN AND SUPPLEMENTAL REPORTS AND TESTIMONY OF BOUCHARD'S EXPERT CAPTAIN R. RUSSELL JOHNSON**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ...............................................................................................................1

ARGUMENT......................................................................................................................1

   I.    JOHNSON SHOULD BE PRECLUDED FROM TESTIFYING ON APPLICATION OF THE REGULATIONS FOR ANCHORING IN HEMPSTEAD HARBOR. ...............................................................................................................1

   II.   JOHNSON'S OPINIONS AS TO INDUSTRY PRACTICE FOR MONITORING AND OVERSIGHT OF ANCHORING ARE INHERENTLY UNRELIABLE AND SHOULD BE EXCLUDED...............................................................................3

   III.  JOHNSON'S REPORTS CONTAIN IMPERMISSIBLE FACTUAL NARRATIVES AND CONCLUSORY OPINIONS WHICH SHOULD BE EXCLUDED FROM USE AT TRIAL. ...........................................................................7

CONCLUSION....................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
   No. 13-cv-324 (RGA), 2017 U.S. Dist. LEXIS 130430 (D. Del. Aug. 16,
   2017) ...................................................................................................................................4, 5

*Arista Records LLC v. Lime Grp. LLC*,
   No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 47416 (S.D.N.Y. Apr. 29,
   2011) ..........................................................................................................................................4

*Boucher v. United States Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ..........................................................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .......................................................................................................2, 4, 5, 6

*Doctor's Hosp. v. Southeast Medical Alliance*,
   878 F. Supp. 884 (E.D. La. 1995) .............................................................................................4

*Forte v. Liquidnet Holdings, Inc.*,
   675 F. App'x 21 (2d Cir. 2017) .................................................................................................6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..................................................................................................................5

*In re M/V MSC Flaminia*,
   No. 12-cv-8892 (KBF), 2017 WL 3208598 (S.D.N.Y. Jul. 28, 2017) ...............................6, 8, 9

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995) ......................................................................................................2

*Riegel v. Medtronic Inc.*,
   451 F.3d 104 (2d Cir. 2006) ......................................................................................................5

*Roman v. Sprint Nextel Corp.*,
   No. 12-CV-276 (VEC), 2014 U.S. Dist. LEXIS 138951 (S.D.N.Y. Sept. 29,
   2014) ..........................................................................................................................................8

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 457 (S.D.N.Y. 2007) .......................................................................................2

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999) ......................................................................................................6

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp. LLC*,
    571 F.3d 206 (2d Cir. 2009) .................................................................................................. 5

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................... 2, 4, 5, 6

Fed. R. Evid. 703 ............................................................................................................ 4, 8

iii

**INTRODUCTION**

Cable Interests respectfully submit this Memorandum in further support of their motion (14-cv-617, Dkt. # 143; 14-cv-1262, Dkt. # 204), to preclude portions of the expert testimony (and reports) of Captain R. Russell Johnson ("Johnson") and in reply to Bouchard's opposition (14-cv-617, Dkt. # 159; 14-cv-1262, Dkt. # 221) ("Opp. Memo.") thereto. Johnson testified at his deposition[1] that he is not an expert (and was not asked to review) the relevant regulations applicable to anchoring in Hempstead Harbor. As such, he should be precluded from testifying on this topic. Moreover, Johnson's methodology of informal telephone calls to select representatives of tug and barge operators lacks a reliable foundation required as a threshold matter for admissibility, and should be excluded. Finally, Johnson's factual narratives are an improper attempt by Bouchard to introduce facts to supplement the record and support improper conclusory expert opinions related to: (a) unseaworthiness of the Tug and Barge, (b) the incompetence of Captain Yates; and (c) Bouchard's knowledge of negligent anchoring practices at Hempstead Harbor.

**ARGUMENT**

**I.   JOHNSON SHOULD BE PRECLUDED FROM TESTIFYING ON APPLICATION OF THE REGULATIONS FOR ANCHORING IN HEMPSTEAD HARBOR.**

Bouchard argues that Johnson should be allowed to testify regarding "the appropriateness" of anchoring in Hempstead Harbor based on "the totality" of his expert qualifications such as his work history in the tug and barge industry, and what Bouchard contends is significant training and education in tug and barge operations. Bouchard contends that "no single one of these sources is dispositive as to whether an expert is qualified" and that Cable Interests focus on a "narrow

---

[1] **Ex. 3**, Declaration of Vincent J. Foley ("**Foley Decl.**"), 14-cv-617, Dkt. ## 145, 145-1; 14-cv-1262, Dkt. ## 206, 206-1, Johnson Tr. at p. 93 (lns. 15-22).

specialty" (i.e., application of regulations to anchoring in Hempstead Harbor) is impermissible. Bouchard further argues that Johnson's qualifications should be resolved through cross-examination, and not preclusion of Johnson's testimony in a single "specialty" area. (Opp. Memo. at 4-6). Bouchard's arguments are without merit. Johnson disqualified himself from testifying on the relevant regulations for anchoring in Hempstead Harbor by expressly admitting that he was not an expert in the relevant area, and as such, his testimony should be precluded.

Bouchard's reliance on *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) and *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) in support of the argument that "'the law does not require' that an expert be involved in a 'narrow specialty' in order to opine on a specific topic" is misplaced. (Opp. Memo. at 5; 576 F. Supp. 2d at 458). The focus in those cases is on "qualifications" from an objective viewpoint (academic training and practical experience), not a subjective one. Cable Interests' argument for preclusion is based upon Johnson's deposition testimony, where he admitted that he is not an expert as to the applicable anchoring regulations for Hempstead Harbor, not upon an objective review of Johnson's academic training and practical experience.

Bouchard incredibly argues that the standards under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Rule 702 permit a proffered expert to testify even if that expert has denied expertise[2] in the critical area of testimony. Cable Interests have not moved to limit Johnson's testimony in the general area of tug and barge operations. Instead, the focus of Cable Interests' motion *in limine* relates to Johnson's own admissions at deposition:

> Q:   Okay and in the absence of an Emergency, is it permissible for Captain Yates or for Bouchard Tugs and Barges to anchor in Hempstead Harbor outside of the cable area?

---

[2] Bouchard has offered no cases in support of the proposition that an expert may testify at trial on topics for which the expert <u>expressly</u> admitted no expertise.

      Meehan:      Objection

A.      Again, I am unclear. And I was not asked to interpret the CFR's. I am unclear whether it is or not.

**Foley Decl. Ex. 3**, Johnson Tr. at p. 93 (lns. 15-22). Not only has Johnson admitted during his deposition that he was not asked to render an opinion regarding the applicable regulations in Hempstead Harbor, he affirmatively testified that he "is unclear" whether it was permissible for Captain Yates or for Bouchard tugs and barges to anchor in Hempstead Harbor.

In view of Johnson's admissions at deposition, however, there is no relevant source of expertise to support his expert testimony on the applicable anchoring regulations in Hempstead Harbor. As Johnson has irreversibly admitted his lack of expertise on the relevant regulations, he should be precluded, *in limine*, from offering any opinions on the critical issue of permissible anchoring in Hempstead Harbor.

## II.    JOHNSON'S OPINIONS AS TO INDUSTRY PRACTICE FOR MONITORING AND OVERSIGHT OF ANCHORING ARE INHERENTLY UNRELIABLE AND SHOULD BE EXCLUDED.

Based on unverified and minimal contacts with select tug and barge operators, Johnson proffers an "expert opinion" that there is "no practice in the industry"[3] for Bouchard to monitor or oversee anchoring locations of their vessels. Johnson based this opinion on an ill-defined "survey" of tug and barge operators, wholly lacking any scientific method, and consisting of a single brief telephone call to a company representative wherein he allegedly "inquired about their current in-house procedures." **Foley Decl. Ex. 3**, Johnson Tr., at p. 83 (ln. 20) - 86 (ln. 24). The tug and tow operators included six (6) West Coast companies and two (2) East Coast companies.[4] Cable

---

[3] **Foley Decl. Ex. 1**, Main Report at p. 10 (Nos. 6, 7, 9); **Foley Decl. Ex. 2**, Supplemental Report at p. 4 (No. 3), as well as the underlying "Observations" #13 (Main Report) and Observation #7 (Supplemental Report).

[4] For the particular company's representative, Johnson testified that the contact (at least for the East Coast companies) was made through Bouchard or its counsel. **Foley Decl. Ex. 3**, Johnson Tr. at pp. 108 (ln. 24) - 109 (ln. 8).

3

Interests' motion challenged the reliability of Johnson's methodology as flawed because Johnson blindly accepted the veracity of these individuals, which does not meet the *Daubert* and Rule 702 threshold requirements for admissibility of expert opinions. *See* Cable Interests' Memorandum in Support of their Motion (14-cv-617, Dkt. #144; 14-cv-1262, Dkt. #205) ("CI Memo") at 9-10.

Bouchard argues that Courts have consistently permitted expert testimony concerning prevailing industry standards based upon a survey of those in the industry. (Opp. Memo. at 8) (citing *Doctor's Hosp. v. Southeast Medical Alliance*, 878 F. Supp. 884 (E.D. La. 1995) and *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 U.S. Dist. LEXIS 47416, at *50-52 (S.D.N.Y. Apr. 29, 2011). These cases do not support Bouchard's position.

In *Doctor's Hosp.* the section of the expert report in question did not involve the type of "informal survey" conducted by Johnson but instead was the result of interviews conducted as part of the expert's ordinary work. In other words, the proponent of the challenged expert in *Doctor's Hosp.* did not seek to introduce survey testimony. 878 F. Supp. at 886. The expert in *Doctor's Hosp.* was not instructed by a party's counsel to make an informal query to support that party's position in a litigation as is the case here. *Arista Records LLC* involved an analysis of an expert's qualifications (Rule 702(a)), not reliability (Rules 702(c)-(d) and 703), to testify as an expert "based upon his years of experience working in and with the music industry about various issues that have had an impact on the industry's revenues." 2011 U.S. Dist. LEXIS 47416 at *51. Neither *Doctor's Hosp.* nor *Arista Records* discuss the issue present here, i.e., the reliability of Johnson's opinions on lack of an "industry practice" based upon informal conversations with tug and tow operators made in the context of a pending litigation.

Johnson's "informal survey" lacks necessary indicia of reliability, and should be excluded for that reason. *See, e.g., Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, No. 13-

cv-324 (RGA), 2017 U.S. Dist. LEXIS 130430, *16-17 (D. Del. Aug. 16, 2017). *Am. Cruise Lines Inc.* involved an informal survey of travel agents. *Id*. The court excluded the informal study because it lacked indicia of reliability, noting that "[p]laintiff failed to provide any information on how these agents were selected, whether they are representative, and how their responses were categorized." *Id*. The court reasoned that, "[w]hile . . . the survey 'need not be a scientific survey' in any formal sense, to be admissible, the survey must be moored in some reliable process that can be tested on cross-examination." *Id*. In this case, there is no "reliable process" that can be tested on cross-examination.

In its opposition, Bouchard submits that "there are no issues" with Johnson's methodology underlying the survey and that any flaws in Johnson's methodology should go to the weight of his testimony and not admissibility. (Opp. Memo. at 6). Bouchard further contends (Opp. Memo. at 7) that this Court should only exclude Johnson's expert testimony if it "is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence 'apples and oranges comparison.'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp. LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (quoting *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999).

Bouchard ignores *Daubert* and Rule 702 criteria for threshold admissibility of expert reports, and suggests that Rule 702 only requires an expert's opinion to be based on "sufficient facts and data," which amounts to "an explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusions." *Riegel v. Medtronic Inc.*, 451 F.3d 104, 127 (2d Cir. 2006). *Riegel* stands for nothing more or less than what is required by Rule 702.

5

Put another way, Johnson's testimony must be the product of reliable principles and methods and Johnson must have reliably applied those principles and methods to the facts of the case. *Id.*

Johnson may not rely on the lay or opinion evidence obtained from other tug and barge operator representatives unless "the requisite standards for reliability are met each step of the way." *In re M/V MSC Flaminia*, No. 12-cv-8892 (KBF), 2017 WL 3208598, * 5 (S.D.N.Y. Jul. 28, 2017). In other words, Johnson has to establish a reliable foundation for his expert testimony on lack of an "industry practice" by showing that he obtained reliable information from the tug and barge company representatives. Johnson cannot meet that requirement because of the flimsy manner in which he went about the "survey" of companies. Johnson blindly accepted the veracity of these individuals based on a single brief telephone call with no documentary or other "fact-checking" to ensure reliability. As such, the foundation for Johnson's testimony is flawed, which renders his opinions on lack of an "industry practice" unreliable, and an impermissible use of hearsay. *Forte v. Liquidnet Holdings, Inc.*, 675 F. App'x 21, 23-24 (2d Cir. 2017) (noting that a failure to independently verify data used in the report can itself constitute grounds for preclusion); *In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999) ("[Expert]'s failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results.").

Bouchard points to Cable Interests' expert, Captain Richard DiNapoli, and argues that this motion is "hypocritical" because DiNapoli testified he was familiar with company policies of tug operators in New York, but could not identify a company which had a policy in place for training or guidance concerning anchoring in New York. (Opp. Memo. at 9). This argument has no merit: first, DiNapoli did not conduct a survey, or purport to base his opinions on a survey of

6

representatives from selected companies in the tug and barge industry; second, DiNapoli's comments in response to Bouchard's questions at his deposition do not support a conclusion that Johnson's methodology is valid.

Johnson's opinions as to industry practice are based solely upon telephone interviews with supposed industry representatives selected by Johnson and Bouchard's counsel in the context of this litigation. Johnson failed to support his opinions with a reliable methodology, and neglected to verify any of the alleged information obtained in the brief telephone calls. Johnson's haphazard manner in collecting information to support the alleged lack of an industry practice is inherently suspect, and unreliable. As such, Johnson's opinions, without a valid methodology, are impermissible hearsay and should be excluded from use at trial.

### III. JOHNSON'S REPORTS CONTAIN IMPERMISSIBLE FACTUAL NARRATIVES AND CONCLUSORY OPINIONS WHICH SHOULD BE EXCLUDED FROM USE AT TRIAL.

As previously detailed, the factual narratives in Johnson's Observations Nos. 1-8 of his Main Report and Observations Nos. 1-6 of his Supplemental Report are improper and should all be precluded. (CI Memo. at 15-16). Johnson is not a percipient witness in this case, and it is improper to use the factual narratives in his expert report or conclusory opinion testimony as a vehicle to supplement facts of record or to develop a new version of facts deemed more favorable to Bouchard. Bouchard agrees that it is improper for an expert to offer factual narratives and conclusory opinions, but contends that if there is a dispute as to whether the contested matters are factual narratives or "factual observations," the appropriate remedy is to resolve the dispute at trial because "the factual assertions relied upon by the expert would have to be supported by admissible evidence." (Opp. Memo. at 10).

Relying on this principle, Bouchard's Opposition largely ignores the points made by Cable Interests in support of this motion to exclude Johnson's factual narratives and improper conclusory opinions. Bouchard argues that Johnson's "Observations" are nothing more than "recitations of facts" relied upon by Johnson in arriving at his various expert opinions and to provide context to his opinions. (Opp. Memo at p. 10). Improper factual narratives included in expert reports are regularly precluded *in limine*. *See Flaminia*, 2017 WL 3208598, at *4 (precluding several improper factual narratives because they did not form the basis of the experts' conclusions). Because Johnson simply provides conclusions with no analysis or methodology, it cannot logically be argued that Johnson's factual narratives form the basis for his conclusions. Johnson simply provides a factual narrative and then, in many cases without reference to that narrative or analysis, separately provides conclusions. While Bouchard's counsel argues that the two must somehow be connected, they have not pointed to how the factual narratives provided by Johnson are relied upon by Johnson in the challenged conclusions. There is no analysis connecting Johnson's factual narrative to those conclusions.

Bouchard argues that Rule 703 permits Johnson's expert opinions to be proffered based on facts "that the expert has been made aware of or personally observed" or alternatively on facts or data that "experts in the particular field would reasonably rely on" in forming an opinion. *Roman v. Sprint Nextel Corp.*, No. 12-CV-276 (VEC), 2014 U.S. Dist. LEXIS 138951, at *7-8 (S.D.N.Y. Sept. 29, 2014) (Opp. Memo. at 11). However, this is beside the point. Again, while Bouchard argues that "each of the challenged opinions is based on facts that Johnson either was made aware or personally observed," Johnson's conclusions do not support such a finding, and Bouchard has not connected Johnson's opinions to the facts provided in any tangible way. Rather, Bouchard

points to deposition testimony of Cable Interests' expert and to volumes of records provided to Johnson (and listed in his report) as support for Johnson's conclusions. (Opp. Memo. at 11-12).

Cable Interests do not contest that experts may rely on facts presented to them, but the expert is limited to relying on actual testimony or documents, and may not rely on a fabricated narrative version of events from their expert report. This Court has the prerogative to strike improper factual narratives which go beyond the actual record to add additional facts or to present a slanted version of facts seeking to support an expert's conclusory opinions. *See Flaminia*, 2017 WL 3208598, at *4. Johnson's report is drafted to interpose factual observations deemed more favorable to Bouchard than the actual record. (CI Memo. at 15-16). Bouchard seeks to use the narrative in support of Johnson's conclusory opinions on ultimate questions for the fact finder such as seaworthiness of the Tug and Barge,[5] competence of Captain Yates, and whether Bouchard "could have reasonably anticipated" that Yates would anchor in the Cable Area at Hempstead Harbor. Cable Interests submit that Johnson's conclusory opinions on these ultimate questions for the fact finder are improper and should be precluded.

## CONCLUSION

For the foregoing reasons, Cable Interests respectfully request that the Court preclude Johnson from testifying on applicable regulations for anchoring in Hempstead Harbor. Similarly, Johnson's opinions on industry practice are based on unreliable methodology and should be precluded. Finally, Johnson's factual narratives and conclusory legal opinions are improper, and should be stricken as unreliable *ipse dixit* statements and opinions.

---

[5] Johnson issued his expert report on February 15, 2018 declaring "[b]oth vessels were seaworthy and there were no deficiencies in the tug and barge that played a part in the decision regarding anchoring on January 6, 2014." Johnson did not actually inspect the vessels until April 4, 2018, more than six weeks after issuing his expert report declaring them "seaworthy" with "no deficiencies." **Foley Decl. Ex. 3**, Johnson Tr. at pp. 98 (ln. 25) - 99 (ln. 2).

Dated: New York, New York
      April 29, 2020

| HOLLAND & KNIGHT LLP | FORAN GLENNON PALANDECH PONZI & RUDLOFF PC |
|---|---|
| By: */s/ James H. Hohenstein* <br> James H. Hohenstein <br> Vincent J. Foley <br> F. Robert Denig <br> Clayton J. Vignocchi <br> 31 West 52nd Street <br> New York, New York 10019 <br> Tel: (212) 513-3200 <br> E-mail: jim.hohenstein@hklaw.com <br>         vincent.foley@hklaw.com <br>         robert.denig@hklaw.com <br>         clayton.vignocchi@hklaw.com | By: */s/ James B. Glennon* <br> James B. Glennon (*pro hac vice*) <br> 222 North LaSalle Street <br> Suite 1400 <br> Chicago, Illinois 60601 <br> Tel: (312) 863-5000 <br> E-mail: jglennon@fgppr.com <br> <br> -and- <br> <br> Peter Billis <br> 40 Wall Street, 54th Floor <br> New York, New York 10005 <br> Tel: (212) 257-7100 <br> E-mail: pbillis@fgppr.com |
| *Attorneys for Limitation Defendants/Claimants: Power Authority of the State of New York* | *Attorneys for Limitation Defendants/ Claimants: Associated Electric & Gas Insurance Services Limited; Energy Insurance Mutual Limited; Brit UW Limited; and, Talbot Underwriting (US) Ltd.* |

COZEN O'CONNOR

By: */s/ Peter G. Rossi*
     Peter G. Rossi
     David Y. Loh
     45 Broadway, 16th Floor
     New York, NY 10006
     Tel: (212) 509-9400
     E-mail: PRossi@cozen.com
               DLoh@cozen.com

*Attorneys for Limitation Defendants/ Claimants: Princeton Excess & Surplus Lines Insurance Company; Westport Insurance Corporation; Aspen Specialty Insurance Company; Navigators Management Company, Inc., New York on behalf of Lloyd's Syndicates: 1221 Navigators, 4000 Pembroke and 2015 Channel; and, National Union Fire Insurance Company of Pittsburgh, PA.*

#74401065_v2